**NOT FOR PUBLICATION**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

KEITH SCHULTZ

           Plaintiff,

  v.

SUMMIT AEROSPACE, INC., et al.,

           Defendants.

Civil Action No.: 24-11530

**OPINION & ORDER**

**CECCHI, District Judge.**

Before the Court is the motion of defendants Summit Aerospace, Inc., Kent Kendrick, Alain Torres, Allan Jiron, and Jorge Fernandez (collectively, "Defendants") to partially dismiss (ECF No. 37; *see also* ECF No. 37-1 ("Br.")) the second amended complaint of plaintiff Keith Schultz ("Plaintiff"). ECF No. 33 ("SAC"). Plaintiff opposed the motion (ECF No. 40 ("Opp.")), and Defendants replied. ECF No. 43 ("Reply"). The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, Defendants' motion is granted in part and denied in part.

## I.    <u>BACKGROUND</u>[1]

Plaintiff, a citizen of New Jersey, previously worked for Summit Aerospace, Inc. ("Summit"), a Florida-based aircraft maintenance and repair corporation owned by Allan Jiron ("Jiron") and Jorge Fernandez ("Fernandez"). SAC ¶¶ 11–12, 15–16. Prior to joining Summit in 2015, Plaintiff alleges that he had multiple conversations with Jiron concerning the terms of his employment contract. *Id.* ¶ 22. After Plaintiff and Jiron "agreed to the terms of the employment

---

[1] For purposes of this motion to dismiss, the Court accepts the complaint's well-pled factual allegations as true, construes them in the light most favorable to Plaintiff, and draws all reasonable inferences in Plaintiff's favor. *See Lutz v. Portfolio Recovery Assocs., LLC*, 49 F.4th 323, 328 (3d Cir. 2022).

1

agreement over the phone," Plaintiff received a copy of the proposed agreement by email from Summit's head of human resources. *Id.* ¶ 23. He then signed the agreement, which he asserts reflected the terms he had discussed with Jiron, and sent it back to Jiron. *Id.* ¶¶ 23–24. Plaintiff then began working for Summit as Marketing Director. *Id.* ¶¶ 11, 24. It does not appear, however, that Jiron or any other agent of Summit ever signed the contract. *See* ECF No. 37-2, Ex. A ("Employment Agreement") at 10.[2]

Under the Employment Agreement, Plaintiff was entitled to commissions of three percent "based on the total invoice for the repairs and outright sales on accounts" assigned to him. *Id.* § 2.A. The contract limited Defendants' ability to modify this commission structure, as it provided that "[a]ny amendment or modification of this Agreement . . . will only be binding if evidenced in writing signed by each party." *Id.* § 11.

Despite these provisions, Plaintiff asserts that in 2016 Defendants made two unilateral changes to his commission structure with respect to landing gear repairs. SAC ¶ 30. First, they reduced Plaintiff's commission on these repairs from three percent to two percent. *Id*. Second, Defendants no longer paid commissions based on the "total invoice" as required in the Employment Agreement. *Id*. Instead, they paid only two percent on the initial fee charged to a client and excluded additional costs that made up the "total invoice." *Id.* ¶¶ 28–30. Plaintiff "regularly objected to the changes in his commission structure for landing gear repairs as a breach of the Agreement," yet Defendants continued to pay Plaintiff the new rates. *Id.* ¶ 33. Despite

---

[2] On a motion to dismiss, a court may "consider documents integral to or explicitly relied upon in the complaint or any undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Motor v. Wesco Distribut., Inc.*, 102 F.4th 172, 178 (3d Cir. 2024) (citation omitted). Plaintiff relies on the Employment Agreement in the SAC and Defendants submit a copy of that document as an exhibit to their motion. *See* SAC ¶¶ 2–3; ECF No. 37-2, Ex. A. The parties do not dispute the authenticity of this document. Accordingly, the Court may consider the Employment Agreement in deciding this motion without converting it to a motion for summary judgment. *See Singleton v. Jas Auto. LLC*, 378 F. Supp. 3d 334, 351 n.17 (E.D. Pa. 2019).

2

these changes, Defendants still paid Plaintiff three percent commissions on all other repairs. *Id.* ¶ 32.

In addition to changing his commission structure, Plaintiff asserts that in 2018 Defendants began interfering with his ability to earn commissions on his existing accounts, as customer service representatives apparently stopped informing Plaintiff when his clients called. *Id.* ¶ 35. These representatives would then earn commissions for new repairs on those accounts, which Plaintiff asserts "rightfully belong[ed]" to him under the Employment Agreement. *Id.* Plaintiff conveyed his objections to this to Kent Kendrick ("Kendrick"), the Chief Operating Officer of Summit. *Id.* ¶¶ 13, 36. Kendrick responded that Plaintiff "had nothing to do with the sale" and questioned why he would receive a commission. *Id.* ¶ 36.

Then, in 2019, Alain Torres ("Torres") became Summit's Vice President of Sales and Marketing and Plaintiff's direct supervisor. *Id.* ¶ 37. At that time, Kendrick allegedly began pulling clients from Plaintiff and assigning them to Torres. *Id.* ¶ 40. The accounts Kendrick and Torres took from Plaintiff included those that Plaintiff "onboarded . . . himself." *Id.* ¶ 42. Plaintiff alleges that, in doing so, they diverted commissions away from Plaintiff that he otherwise would have earned. *Id.* Also in 2019, Plaintiff learned that Defendants were transferring his client accounts to Summit's "house account." *Id.* ¶ 44. Plaintiff would then not receive commissions on any new repairs on these accounts, which allegedly violated the Employment Agreement. *Id.* ¶ 46. Despite protesting that these changes were made without any written modification to the agreement, Defendants did not remedy the situation but instead continued to reassign his client accounts. *Id.* ¶¶ 47–48.

Subsequently, in 2024, Plaintiff asserts that Defendants began withholding commissions from Plaintiff if clients did not pay their invoices on time, even after the client subsequently paid.

3

*Id.* ¶ 50.  Defendants would also withhold commissions from Plaintiff if clients were unhappy with the repair work that was performed by Defendants. *Id.* ¶ 51.  Plaintiff alleges that this violated the Employment Agreement, because it did not permit Defendants to withhold commissions on these bases. *Id.* ¶¶ 52–53.

Also in 2024, Torres told Plaintiff that all his commissions would be reduced to two percent. *Id.* ¶ 55.  Thus, Plaintiff began receiving reduced commissions on all repairs, not just those related to landing gears. *Id.*  As with prior modifications to his commission structure, Defendants made this change without Plaintiff's consent. *Id.*  And after numerous objections to these changes, Torres allegedly told Plaintiff that he was going to "shoot [himself] in the foot if [he] keeps this up." *Id.* ¶ 56 (alterations in original).

In addition to the alleged breaches of the Employment Agreement, Plaintiff asserts that he suffered age and national origin discrimination at Summit. *Id.* ¶¶ 6, 37–40, 58–68.  After he made repeated complaints about this treatment and his unpaid commissions, Summit terminated his employment. *Id.* ¶¶ 69–70.  At the time he was fired on August 29, 2024, Plaintiff alleges that Defendants owed him $917,104.24 in unpaid commissions. *Id.* ¶¶ 70–71.

## II.    LEGAL STANDARD

To survive dismissal under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).  A claim is facially plausible when supported by "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  A complaint that contains "a formulaic recitation of the elements of a cause of action" supported by mere conclusory statements or offers "'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Id.* (citation omitted).  In

4

evaluating the sufficiency of a complaint, the court accepts all factual allegations as true, draws all reasonable inferences in favor of the non-moving party, and disregards legal conclusions. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231–34 (3d Cir. 2008).

### III.    DISCUSSION

Plaintiff asserts twelve claims in the SAC: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) violation of the New Jersey Wage Payment Law ("NJWPL"); (4) retaliation under the NJWPL; (5) violation of the Florida Civil Theft Statute, (6) age discrimination in violation of the New Jersey Law Against Discrimination ("NJLAD"); (7) national origin discrimination in violation of the NJLAD; (8) retaliation under the NJLAD; (9) aiding and abetting under the NJLAD; (10) age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"); (11) national origin discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); and (12) retaliation under the ADEA. *See* Compl. ¶¶ 72–169. Defendants move to dismiss claims in part as discussed below. ECF No. 37.

### A.    Contractual Claims

Plaintiff raises two contractual claims: breach of contract and breach of the implied covenant of good faith. For the reasons discussed below, the Court grants Defendants' motion to dismiss the latter claim only.

#### 1.    *Breach of Contract*

In Count One, Plaintiff asserts a claim for breach of the Employment Agreement. SAC ¶¶ 72–77. Defendants raise three arguments to dismiss this claim. First, they contend that no one from Summit ever manifested assent to the Employment Agreement by signing it, and thus, there was no contract. *See* Br. at 8–11; Reply at 3–6. Second, Defendants argue that Plaintiff was an

at-will employee subject to changes in compensation. *See* Br. at 12–13; Reply at 6–7. Third, they

argue that at least some aspects of Plaintiff's contract claim would be time-barred. *See* Br. at 13.

### a.    Contract Formation

Defendants argue that they never manifested assent to the purported Employment

Agreement by countersigning the document. *See* Br. at 8–11. Although a contracting party may

manifest assent expressly through a signature, they may also do so impliedly through conduct.

*See, e.g.*, *James v. Global TelLink Corp.*, 852 F.3d 262, 266–67 (3d Cir. 2017) (citing *Weichert*

*Co. Realtors v. Ryan*, 608 A.2d 280, 284 (N.J. 1992)); *Miami Dolphins, Ltd. v. Engwiller*, 410 So.

3d 685, 688 (Fla. Dist. Ct. App. 2025) (noting that a party can "manifest assent by written or

spoken word" or "through conduct"). [3]

Here, Plaintiff plausibly alleges that Defendants impliedly manifested assent to the

Employment Agreement through their conduct. He asserts that he received a contract containing

specific terms regarding his compensation, signed that contract, and then worked for Summit for

approximately one year under the terms of that contract before Defendants began altering his

commission structure. SAC ¶¶ 22–26, 30. Although Defendants protest that they never signed the

Employment Agreement, the allegations suffice at this stage to show that Defendants "accept[ed]

[Plaintiff's] services without expressing any objection" to the terms of the Employment

---

[3] Although the Employment Agreement contains a Florida choice of law provision, Employment Agreement § 13, the parties cite Florida and New Jersey law in addressing certain arguments on the two contractual claims. *See* Br. at 8–16; Opp. at 10–19; Reply at 3–8. The parties, however, do not meaningfully brief any choice of law analysis. Therefore, where the parties have cited the laws of both states, the Court will do the same "without holding which [law] governs." *O'Brien v. BioBancUSA*, No. 09-2289, 2010 WL 2923283, at *2 n.2 (D.N.J. July 19, 2010). In any event, there largely appears to be no relevant substantive difference for the purposes of resolving this motion. *See Aug. Uribe Fine Art, LLC v. Dartmilano Srl*, No. 22-3104, 2025 WL 3707125, at *6 n.7 (D.N.J. Dec. 19, 2025) (noting that where no real conflict exists, a court may "refer interchangeably to the laws of [the relevant states] in discussing the law applicable to the case" (alteration in original) (quoting *On Air Ent. Corp v. Nat'l Indem. Co.*, 210 F.3d 146, 149 (3d Cir. 2000))). And though the relevant limitations period differs between the states, for reasons discussed below these claims are not time-barred under either state's laws. Accordingly, the application of one state's law over the other's does not affect the disposition of this motion.

Agreement, and thus "manifested assent to those terms." *Buchmiller v. Krannich Solar W., LLC*, No. 22-7221, 2025 WL 582252, at *9 (D.N.J. Feb. 20, 2025) (quoting *Weichert*, 608 A.2d at 285); *see also Lankford v. Irby*, No. 04-2636, 2006 WL 2828552, at *6 (D.N.J. Sept. 29, 2006) (stating that "Defendants cannot partly comply with the terms of the agreement, enjoy the offeror's performance . . . and then claim" that there was no manifestation of assent to that agreement); *GMRI, Inc. v. Brautigan*, 392 So. 3d 1098, 1103 (Fla. Dist. Ct. App. 2024) (recognizing that assent to an agreement may be shown through conduct even where the agreement lacks a necessary signature). Accordingly, Plaintiff has plausibly alleged that Defendants assented to the Employment Agreement at this stage. [4] Defendants' motion to dismiss Count One based on the absence of a contract is therefore denied.

### b.    Plaintiff's At-Will Employment Status

Defendants assert that Plaintiff's status as an at-will employee allowed them to alter the terms of his compensation. Br. at 12–13. [5] Although an employer can generally modify the terms of an at-will employee's employment, *Acre Mortg. & Fin, Inc. v. Lang*, No. A-1385-21, 2024 WL 4686045, at *11 (N.J. Super. Ct. App. Div. 2024), this power can be circumscribed by the terms

---

[4] Defendants cite to a series of cases to argue that "a party not a signatory to a contract cannot be bound by the terms of that contract." Br. at 9–10 (quoting *Beth Schiffer Fine Photographic Arts, Inc. v. Colex Imaging, Inc.*, No. 10-5321, 2014 WL 1908500, at *3 (D.N.J. May 13, 2014)). These authorities analyze whether a third party can either invoke or be bound by the terms of a contract between two other parties. *See Beth Schiffer*, 2014 WL 1908500, at *3–4 (analyzing whether a non-party to a contract could be bound to that contract's forum selection clause); *SI Power LLC v. Pathway Holdings Mgmt. V, LLC*, No. 15-6101, 2016 WL 7130920, at *6 (D.N.J. Dec. 7, 2016) (analyzing whether non-parties could invoke a contract's forum selection clause); *RK Env't, LLC v. Lloyd*, No. 15-3201, 2015 WL 8536556, at *4 (D.N.J. Nov. 25, 2015) (analyzing whether non-parties could be bound by a contract's forum selection clause), *report and recommendation adopted*, 2015 WL 8492049 (D.N.J. Dec. 10, 2015); *Shapiro v. Logitech, Inc.*, No. 17-673, 2019 WL 397989, at *4–5 (D.N.J. Jan. 31, 2019) (analyzing whether non-parties could invoke an arbitration provision). These cases are distinguishable, however, as Plaintiff is neither trying to invoke a contract between Defendants and a third party nor attempting to bind Defendants to a contract between Plaintiff and a third party. Rather, he is seeking to hold Defendants liable for obligations in a contract that he alleges existed between Defendants and him.

[5] The parties only discuss New Jersey law with respect to this argument. *See* Br. at 12–13; Opp. at 13–14; Reply at 6–7. The Court therefore only addresses New Jersey law here.

of an employment agreement. *Mita v. Chubb Comput. Servs., Inc.*, 767 A.2d 989, 994 (N.J. Super. Ct. App. Div. 2001) (noting that, even in an at-will employment arrangement, the parties can still "limit the employer's power to discharge or similarly confine its authority with respect to other aspects of the employment relationship"). Plaintiff alleges that the Employment Agreement contained restrictions on Defendants' power to unilaterally modify his compensation structure. SAC ¶ 5; *see also* Employment Agreement § 11. Thus, regardless of whether the employment relationship was at will, the Employment Agreement "contain[ed] . . . limitation[s]" on Defendants' "right to amend the terms" of Plaintiff's employment. *See Acre Mortg. & Fin*, 2024 WL 4686045, at *12. And for the reasons discussed above, Plaintiff has plausibly alleged that Summit assented to the contract. Accordingly, Defendants' motion to dismiss the breach of contract claim on the basis that he was an at-will employee is denied.

### c.       *Statute of Limitations*

Defendants also argue that some alleged breaches of the Employment Agreement are barred by the statute of limitations. "A complaint is subject to dismissal on statute of limitations grounds under Rule 12(b)(6) only when the statute of limitations bar is apparent on the face of the complaint." *Fitzsimmons v. Stuckey*, No. 20-2052, 2023 WL 6690717, at *3 (M.D. Pa. Oct. 12, 2023). The limitations period for contract claims is five years in Florida and six years in New Jersey. *See* Fla. Stat. § 95.11(2)(b); N.J. Stat. Ann. § 2A:14-1(a).

Plaintiff filed his original complaint in this action on December 31, 2024. *See* ECF No. 1. Even under the shorter Florida limitations period, some of the breaches alleged are not time-barred as they occurred after December 31, 2019. *See* SAC ¶¶ 50–55 (alleging breaches in 2024). Moreover, Plaintiff alleges that Defendants continuously breached the Employment Agreement by underpaying or failing to pay commissions that were due to him. *See id.* ¶¶ 30–36, 40–55. Given

8

that Plaintiff has alleged breaches of a continuing nature that extend into the limitations period, Defendants' motion to dismiss on timeliness grounds is denied. *See Grove Isle Ass'n, Inc. v. Grove Isle Assocs., LLLP*, 137 So. 3d 1081, 1095 (Fla. Dist. Ct. App. 2014) (holding that breach of contract claims were timely even where the initial breach occurred outside of the limitations period because the plaintiff alleged that the defendant continued to breach the contract into the limitations period); *Richer Mktg. Inc. v. Fairfield Gourmet Foods Corp.*, No. 15-6793, 2017 WL 3641742, at *3 & n.4 (D.N.J. Aug. 24, 2017) (declining to decide on a motion to dismiss whether certain breaches of contract were untimely when the defendant had allegedly breached the contract in at least some instances within the limitations period by failing to pay commissions to the plaintiff). In sum, Defendants' motion to dismiss Count One is denied.

### 2. *Breach of the Implied Covenant of Good Faith and Fair Dealing*

In Count Two, Plaintiff raises a claim for breach of the implied covenant of good faith and fair dealing. SAC ¶¶ 78–82. Both Florida and New Jersey impose a duty of good faith and fair dealing on contracting parties. *Soranno v. Heartland Payment Sys., LLC*, No. 18-16218, 2019 WL 3369785, at *3 (D.N.J. July 26, 2019); *Griffin v. Motorsport Games Inc.*, No. 24-21929, 2024 WL 4564330, at *6 (S.D. Fla. Oct. 24, 2024). But "[a] breach of the covenant of good faith and fair dealing must not arise out of the same conduct underlying an alleged breach of contract action." *TBI Unlimited, LLC v. Clear Cut Lawn Decisions, LLC*, No. 12-3355, 2013 WL 6048720, at *3 (D.N.J. Nov. 14, 2013); *Griffin*, 2024 WL 4564330, at *6 (noting that Florida courts will dismiss a good faith and fair dealing claim where it is based on the same facts underlying a breach of contract claim).

As Defendants argue, Br. at 14–16, Plaintiff relies on the same alleged conduct by Defendants to support his breach of contract and implied covenant claims. Plaintiff asserts that

Defendants violated the implied covenant of good faith by "manipulat[ing] their discretion and control" over his commissions. Opp. at 17–18. But he also alleges that Defendants lacked any right or discretion to take these actions under the Employment Agreement. *See, e.g.*, SAC ¶¶ 30–34 (asserting that a change to his commission structure resulted in "multiple continuous breaches of the [Employment] Agreement"); *id.* ¶ 35 (asserting that customer service representatives were receiving commissions that were owed to Plaintiff under the Employment Agreement); *id.* ¶¶ 40–49 (asserting that Defendants reassigned Plaintiff's client accounts from Plaintiff "[i]n breach of the [Employment] Agreement"); *id.* ¶¶ 50–54 (asserting that Defendants' withholding of earned commissions based on late client payments or dissatisfaction with repairs was not permitted by the Employment Agreement and that Plaintiff never consented to such withholding); *id.* ¶ 55 (asserting that a change to his commission structure was made without following the requirements of the Employment Agreement). These allegations suggest that Defendants acted inconsistently with the Employment Agreement, not that Defendants "act[ed] consistently with the terms of the contract," but in a way that harmed Plaintiff's right to receive the "fruits of the contract." *Soranno*, 2019 WL 3369785, at *3 (citation omitted). Thus, the "heart of the bad faith alleged" is the same conduct alleged to have violated the Employment Agreement. *Vita v. Vita*, No. 21-11060, 2022 WL 376764, at *2 (D.N.J. Feb. 8, 2022); *see also Griffin*, 2024 WL 4564330, at *6–7. Accordingly, Plaintiff has failed to assert an implied covenant claim independent of his breach of contract claim and Defendants' motion to dismiss Count Two is granted.

## B. NJWPL

Plaintiff next raises claims for substantive violations of the NJWPL and retaliation under the same. For the reasons discussed below, the Court denies Defendants' motion to dismiss these counts.

### 1. *Substantive Violations*

In Count Three, Plaintiff raises a claim for substantive violations of the NJWPL. SAC ¶¶ 83–94. Defendants argue that this claim should be dismissed because the statute requires only that an employer give advance notice of changes to commission structures, and Plaintiff has not alleged that he did not receive such notice. Br. at 16–17. Plaintiff, however, responds that he is not pursuing a claim for a lack of advance notice. Opp. at 21–22. Rather, Plaintiff asserts that Defendants in some instances failed to pay him commissions at all. *See* SAC ¶ 88. Specifically, he alleges that Defendants withheld his commissions entirely when clients were dissatisfied with repairs. *Id.* ¶¶ 50–51. And the NJWPL prohibits employers from withholding earned wages "except under specifically defined circumstances." *Morales v. Aqua Pazza LLC*, No. 20-6690, 2022 WL 1718050, at *4 (D.N.J. May 27, 2022) (quoting N.J. Stat. Ann. §§ 34:11-4.2, 4.4); *see also* N.J. Stat. Ann. § 34:11-4.1(c) (defining "[w]ages" to include "commission[s]"). Defendants do not assert that any such circumstance would apply here to have allowed them to withhold Plaintiff's earned commissions. *See* Br. at 16–17; Reply at 9–10. Accordingly, Plaintiff has plausibly pled a claim under the NJWPL and Defendants' motion to dismiss Count Three is denied.[6]

### 2. *Retaliation*

In Count Four, Plaintiff raises a claim for retaliation under the NJWPL. SAC ¶¶ 95–106. The NJWPL prohibits employers from retaliating against an employee "because the employee has made a complaint to [his] employer . . . that the employer has not paid [him] the full amount of wages agreed upon." N.J. Stat. Ann. § 34:11-4.10(a). Defendants argue that Plaintiff's retaliation

---

[6] Defendants also assert that this claim fails because there was no employment contract. Br. at 16. For the reasons discussed above, at this stage Plaintiff has plausibly pled that Defendants manifested assent to the Employment Agreement.

11

claim should be dismissed because Plaintiff did not engage in protected activity for the purposes of a retaliation claim when he complained about unpaid wages. Br. at 17–22. They contend that to engage in such activity, Plaintiff must have had a "good faith, reasonable belief" that he was due unpaid wages. *Id.* at 20–22. Defendants assert that Plaintiff could not have held such a belief because he knew that he never had a contract with Summit. *See id.* at 22; Reply at 11.

For reasons discussed above, however, Plaintiff plausibly alleges that Defendants assented to his Employment Agreement through their conduct, and Defendants' argument that Plaintiff knew there was no contract is inconsistent with these well-pled allegations. Thus, the Court cannot find that Plaintiff did not have a "good faith, reasonable belief" that he was owed unpaid wages without discrediting these allegations, which it may not do at this juncture. *See Cornelius v. PNC Bank, N.A.*, 585 F. Supp. 3d 792, 795 (W.D. Pa. 2022) (declining, on a motion to dismiss, to accept an "argument [that was] fighting against the factual allegations (and the reasonable inferences that can be drawn from them) that [were] in the pleadings"). Defendants' motion to dismiss this claim is therefore denied.

### 3. Timeliness

Defendants contend that Plaintiff's NJWPL claims are barred, in part, by the statute of limitations. The limitations period for claims under the NJWPL is six years. *See Cruz v. Aspen Landscaping Contracting, Inc.*, No. A-2157-22, 2024 WL 5230483, at *7 (N.J. Super. Ct. App. Div. Dec. 27, 2024) (concluding that private causes of action under the NJWPL are subject to the six-year statute of limitations found in N.J. Stat. Ann. § 2A:14-1); *Carlson v. Weber*, No. A-611-24, 2025 WL 3022219, at *3 (N.J. Super. Ct. App. Div. Oct. 29, 2025) (same); *Guimaraes v. Metal Transp., LLC*, 790 F. Supp. 3d 389, 399–402 (M.D. Pa. 2025) (analyzing New Jersey law in concluding that the New Jersey Supreme Court would apply the six-year limitations period).

Plaintiff filed his original complaint in this action on December 31, 2024.  *See* ECF No. 1. Thus, any conduct that allegedly violated the NJWPL prior to December 31, 2018, is time-barred. Nevertheless, Plaintiff has asserted that Defendants withheld his wages and took retaliatory actions since that time.  *See* SAC ¶ 50 ("Starting in 2024, Defendants began withholding commissions from Plaintiff if the clients did not pay their invoice on time . . . ."); *id.* ¶¶ 56, 70 (alleging that Plaintiff was fired a few weeks after he was told that he was going to "shoot [himself] in the foot" if he kept complaining about his unpaid commissions (alteration in original)).  Accordingly, his NJWPL claims are not completely time-barred and may proceed at this juncture.[7]

### 4. *Fernandez and Jiron Are Employers Under the NJWPL*

Defendants contend that Fernandez and Jiron should be dismissed from the case because Plaintiff does not allege that they took any action.  Br. at 24–25.  Under the NJWPL, however, an "employer" includes "an individual with control over the entity."  *Morales v. Aqua Pazza LLC*, No. 20-6690, 2022 WL 1718050, at *4 (D.N.J. May 27, 2022).  Thus, as the owners of Summit, SAC ¶¶ 15–16, Fernandez and Jiron may be individually liable under the NJWPL for any unpaid wages.  *Collins v. ARP Renovations & Maint., LLC*, No. 16-4684, 2018 WL 1293153, at *4 (D.N.J. Mar. 13, 2018).  Because the Court will not dismiss the NJWPL claims at this time, Defendants' motion to dismiss Fernandez and Jiron from the case is denied.

### C.    Florida Civil Theft Statute

In Count Five, Plaintiff asserts a claim for civil theft under Florida law.  SAC ¶¶ 107–113. Defendants argue that the claim fails because there is no alleged theft of money independent of an

---

[7] Plaintiff also argues that he could pursue his substantive NJWPL claim based on conduct before the applicable limitations period because Defendants allegedly committed a series of continuous or recurring contractual breaches. Opp. at 22–23.  But the case he cites for this discusses standard breach of contract claims.  *Ballantyne House Assocs. v. City of Newark*, 635 A.2d 551, 555–56 (N.J. Super. Ct. App. Div. 1993).  It is unclear based on this single authority that the continuing breach doctrine is available for NJWPL claims.  In any event, Plaintiff has alleged some timely violations of the NJWPL.

asserted failure to comply with the Employment Agreement. Br. at 22–24. "It is well-established law in Florida that a simple debt which can be discharged by the payment of money cannot generally form the basis of a claim for . . . civil theft." *Moore v. Pooches of Largo, Inc.*, No. 20-2184, 2023 WL 11916112, at *2 (M.D. Fla. Feb. 22, 2023) (citation omitted), *aff'd*, No. 23-13568, 2025 WL 1445581 (11th Cir. May 20, 2025). Further, a civil theft claim cannot be based on a "contractual dispute over an uncertain or unspecified amount of money alleged to be owed" absent "an identifiable account or piece of property from which the money is to be paid." *Escudero v. Hasbun*, 689 So. 2d 1144, 1147 (Fla. Dist. Ct. App. 1997). Instead, "the funds at issue must be 'specific money capable of identification,' meaning 'there must be an obligation to keep intact or deliver the specific money in question.'" *Bostic v. Bodie*, No. 24-10126, 2025 WL 1443834, at *6 (11th Cir. May 20, 2025) (citation omitted).

Plaintiff has failed to state a claim for civil theft. He alleges that Defendants failed to pay him owed commissions. SAC ¶¶ 30–31, 35, 40–42, 44–46, 50, 55, 71. He has not, however, "identified a specified sum of money from an identifiable account." *Escudero*, 689 So. 2d at 1147; *see also Moore*, 2025 WL 1445581, at *4 (affirming the dismissal of a civil theft claim on the basis that "unpaid wages" were not specifically identifiable funds); *Chinea v. United Drywall Grp.*, No. 09-20274, 2010 WL 11506033, at *2 (S.D. Fla. Feb. 17, 2010) (finding that "unpaid wages" are "not clearly identifiable, specific money"). Accordingly, Plaintiff has not plausibly pled a civil theft claim and Defendants' motion to dismiss Count Five is granted.

### D.    Individual Liability for Discrimination Claims

In Counts Six, Seven, Eight, Ten, Eleven, and Twelve, Plaintiff asserts claims for age and national origin discrimination and retaliation under the ADEA, NJLAD, and Title VII. SAC ¶¶ 114–37, 143–69. Defendants contend that these claims must all be dismissed as to the individual

14

Defendants because there is no individual liability for such claims. Br. at 25–26. Plaintiff responds that he did not intend to assert any of these claims against any of the individuals. Opp. at 29–30. Nevertheless, the allegations in the SAC do not clearly exclude these individuals in describing these causes of action. *See, e.g.*, SAC ¶ 134 ("Defendants took adverse actions against Plaintiff . . . ."); *id.* ¶ 150 ("Defendants' decision to terminate the Plaintiff violated the ADEA."). Accordingly, their motion to dismiss these claims as to the individual Defendants is granted. *See Yue v. Aisner*, No. 24-10413, 2025 WL 2663644, at *2 n.6 (D.N.J. Sept. 17, 2025).

## IV. CONCLUSION

Accordingly, for the reasons stated above, **IT IS** on this 17th day of July, 2026;

**ORDERED** that Defendants' motion to dismiss (ECF No. 37) is **GRANTED IN PART** and **DENIED IN PART**; and it is further

**ORDERED** that Counts Two and Five are **DISMISSED WITHOUT PREJUDICE** as to all Defendants; and it is further

**ORDERED** that Counts Six, Seven, Eight, Ten, Eleven, and Twelve are **DISMISSED WITHOUT PREJUDICE** as to Defendants Kendrick, Torres, Jiron, and Fernandez; and it is further

**ORDERED** that Plaintiff shall have thirty (30) days from entry of this Opinion and Order to submit an amended complaint that addresses the deficiencies identified in this Opinion and Order. Insofar as Plaintiff submits a further amended complaint, he shall also provide a form of the amended complaint that indicates in what respect it differs from the current complaint, by bracketing or striking through materials to be deleted and underlining materials to be added. *See* L. Civ. R. 15(a)(2).

**SO ORDERED.**

15

*s/ Claire C. Cecchi*

**CLAIRE C. CECCHI, U.S.D.J.**

16